FRIEDA KAEHLER and CHARLES KAEHLER, Respondents, v. NORTH GERMAN LLOYD, Appellant, and ATLANTIC BASIN IRON WORKS, INC., Impleaded Defendant, Appellant.

First Department, May 8, 1942.

*Walter E. Warner, Jr.*, of counsel [*Chambers, Clare & Morris*, attorneys], for the impleaded defendant, appellant.

*William L. Shumate* of counsel [*Andrews, Baird & Shumate*, attorneys], for the defendant, appellant.

*Harry G. Liese* of counsel [*Herman Goldman*, attorney], for the respondents.

GLENNON, J. This is a personal injury action. The plaintiff Frieda Kaehler on June 13, 1938, was a passenger on the steamship *Columbus en route* to Germany from New York. During the afternoon of that day, in company with her sister and brother-in-law, she went to an open swimming pool which was located

on the hurricane deck. She had on her bathing suit over which she wore slacks. She went into a small dressing room. She testified, " I wanted to take off my slacks, what I wore over my bathing suit. I sat down on the bench and the bench collapsed, and I fell on that stone floor." As a result, she sustained rather severe injuries.

After the action was instituted by plaintiffs against the defendant North German Lloyd, the latter obtained an order impleading the defendant-appellant, Atlantic Basin Iron Works, Inc. The order provided in part that the defendant North German Lloyd " be permitted to serve a supplemental summons together with an answer and cross-complaint as to the defendant Atlantic Basin Iron Works, Inc."

North German Lloyd's cross-complaint against Atlantic Basin Iron Works, Inc., sets forth two causes of action. The first was for breach of warranty, and the second was for negligence in the construction of the bench or in the selection of the materials used in connection therewith. Atlantic Basin Iron Works denied the material allegations of the cross-complaint relating to a breach of warranty and also negligence on its part in the construction of the bench. It then set forth two separate defenses. The first was that North German Lloyd had sole and exclusive control of the steamship *Columbus* during the period from December 18, 1937, down to the date of the accident on June 13, 1938. The former date refers to the construction and installation of the bench. It is alleged in this defense that the defective condition was caused solely by the negligence of North German Lloyd in maintaining the bench between the date of the installation and the date of the accident. The second separate defense of Atlantic Basin Iron Works alleges that the bench was designed and installed in accordance with plans and specifications furnished by North German Lloyd and that the materials used were in accordance with North German Lloyd's specific direction.

It is not disputed that the cause of the collapse of the bench was, as plaintiff Frieda Kaehler said, that " the hinges came out." One of the witnesses testified in part that the screws and hinges " separated from the wall " and " pulled away from the teakwood piece." This witness in fact picked up one of the screws and turned it over to one of the ship's officers. Incidentally that screw was not produced at the trial by North German Lloyd.

The testimony of the witnesses called by the impleaded defendant indicated quite clearly that brass hinges and brass screws were used in the installation of not only this particular bench which collapsed but also of all the others. Yet we find that the

swimming pool steward, Herman Lankenau, an employee of North German Lloyd, whose deposition was taken by the latter in an internment camp, said in referring to this particular bench, " It was connected with iron screws and hinges." The chief officer of the ship, K. Pfennig, whose deposition was also taken by North German Lloyd, said in describing the bench after the accident, " the screws were pulled out " but " the piece of wood looked good." It is not disputed on behalf of North German Lloyd that forty to fifty people used this particular bench daily during trips when weather conditions permitted.

The marine superintendent of the line, Captain William Drechsel, testified in part that he observed the installation of the work by Atlantic Basin Iron Works and that brass hinges were used on the bench and brass screws were likewise used in affixing the bench to the teakwood block. It is not disputed that proper construction of the work in question required the use of brass hinges and brass screws rather than iron hinges and iron screws.

At the conclusion of the main charge, the attorney for North German Lloyd made the following request: " I ask the Court to charge the jury that in the event they find for the plaintiffs against the North German Lloyd upon the theory as advanced by the plaintiffs that then they must find a verdict in favor of the North German Lloyd as against the Atlantic Basin Company." In reply the court said: " I am inclined to think that is so." Exception was duly noted thereto by the attorney who represented Atlantic Basin Iron Works.

After the jury retired for deliberation, the following question was received by the court from the jury: " Will your Honor state as to whether you instructed the jury to make it compulsory for us to bring in a verdict against Atlantic Basin Iron Works, should the jury decide for plaintiffs against North German Lloyd." To this question the court answered, " Yes." Exception was duly noted by the attorney for Atlantic Basin Iron Works. A sealed verdict was ordered. It was opened the following day in the presence of the court, counsel and the jury and read as follows: " The jury say they find a verdict for Frieda Kaehler in the sum of $3,000.00, also for Charles Kaehler in the sum of $1,000.00 against the North German Lloyd, defendant, and by reason of the Court's instruction we are compelled to find the above amounts against Atlantic Basin Iron Works, Inc."

There can be no question but that the plaintiffs are entitled to a recovery. The important question is which defendant should be compelled to pay. We believe the court fell into error in instructing the jury that in the event they found in favor of the plaintiffs

against North German Lloyd, then they were compelled to find a verdict in favor of North German Lloyd as against Atlantic Basin Iron Works.

The ship was under the exclusive control of the defendant North German Lloyd from December 18, 1937, down to the day of the accident. Whether or not some of the passengers or some of the employees of the steamship company tampered with the hinges and screws which " pulled out," is difficult to determine. There is no evidence in the record which would indicate that Atlantic Basin Iron Works used iron screws in connection with the hinges in place of the brass screws which were to be installed. We can understand, therefore, the reluctance of the jury to find a verdict over against Atlantic Basin Iron Works.

The motion made for a direction of a verdict in its favor by Atlantic Basin Iron Works should have been granted. Since there is no dispute as to the amounts of recovery and also as to the liability on the part of North German Lloyd in so far as plaintiffs are concerned, we direct that that part of the judgment should be affirmed, with costs to the plaintiffs. The second provision of the judgment which deals with the recovery over by North German Lloyd against Atlantic Basin Iron Works should be reversed, with costs to the latter against North German Lloyd, and the cross-complaints dismissed.

MARTIN, P. J., COHN and CALLAHAN, JJ., concur.

Judgment, in so far as appealed from by the defendant North German Lloyd, unanimously affirmed, with costs to the respondents. Judgment, in so far as it directs recovery over on the part of the defendant North German Lloyd against the impleaded defendant, Atlantic Basin Iron Works, Inc., unanimously reversed, with costs to said impleaded defendant against the defendant North German Lloyd, and the cross-complaints dismissed.